[No. 21050.    Department One.—March 3, 1894.]

# THE PEOPLE, RESPONDENT, *v.* W. R. LANE, APPELLANT.

CRIMINAL LAW—PRACTICE—DISMISSAL OF INFORMATION—FAILURE OF MAGISTRATE TO INDORSE COMMITMENT—RE-EXAMINATION NOT REQUIRED.—Where an information was dismissed by the trial court on the ground that the defendant had not been legally committed by a magistrate, and it appeared that the only irregularity in the proceedings before the magistrate consisted in his failure to make a proper indorsement of the commitment upon the complaint at the conclusion of the examination, it was proper for the trial court to order that the papers be sent back to the magistrate for proper indorsement without another preliminary examination, and that upon return of the same the district attorney should file another information.

ID.—HOMICIDE—EVIDENCE—CONDITION OF GROUND—FINDING OF BODY.— Upon the trial of a defendant charged with murder, where it appears

CI. CAL.—33

that the affray occurred in the dark; that many shots were fired; that two persons were killed and one wounded, and three pistols were introduced in evidence of different calibers, each containing a number of empty and loaded cartridges, ·it was not error for the court to allow the introduction of testimony as to the condition of the ground, and the finding of the body of one of the persons killed, so that the jury should be put in possession of all the facts and circumstances in order that it might determine whether the defendant killed the person with whose murder he was charged.

ID.—PRIVILEGED COMMUNICATIONS—PHYSICIAN AND PATIENT.—The rule as to privileged communications between patient and physician does not apply in criminal cases. The privilege was not conferred to shield a person charged with the murder of another, or to be used as a weapon against one charged with crime.

ID.—OPINION EVIDENCE—MENTAL CONDITION OF DEFENDANT—QUALIFICATION OF WITNESS—DISCRETION.—The action of the trial court in permitting witnesses to give their opinion as to the mental condition of a defendant on trial on a criminal charge cannot be said to have been erroneous where it was shown that the witnesses were acquainted with the defendant, and had more or less opportunity for acquiring knowl-, edge on which to base an opinion. In such matters a very large discretion must be conceded to the trial court.

ID.—CONSPIRACY—CIRCUMSTANTIAL EVIDENCE.—A conspiracy, like any other fact, may be proven by circumstantial evidence.

ID.—REBUTTAL OF INSANITY—PROOF OF INCEST.—Proof that a defendant, upon trial for murder, had committed the crime of incest with his daughter is admissible in rebuttal, where the claim of the defense is that the defendant had become insane through fear that the deceased was trying to debauch defendant's daughter.

ID.—COMMISSION OF ANOTHER OFFENSE.—Evidence tending to show a material fact or motive, although it also tends to prove the commission of another offense by the defendant, is relevant and admissible in a criminal action.

ID.—OBJECTIONABLE REMARKS OF PROSECUTING ATTORNEY—KNOWLEDGE OF JUDGE.—A judgment of conviction in a criminal action will not be reversed upon appeal because of objectionable remarks of the prosecuting attorney in his argument to the jury, where the judge was at the time engaged in examining the instructions, and, so far as the record shows, knew nothing about the fact.

ID.—INSANITY—PRESUMPTION OF CONTINUANCE—MODIFICATION OF INSTRUCTIONS—HARMLESS RULING.—The modification of an instruction that if the jury "should find from the evidence that the defendant was insane at a period before the homicide in question, then, in that case, his insanity is presumed to have continued," by the addition of the clause "up to the time of the homicide, provided the exciting cause of such insanity also exists up to the time of the homicide," even if conceded to be erroneous in the abstract, cannot be said to be prejudicial, where the evidence for the defendant tended to show not only that the defendant was somewhat deranged a year or more prior to the time of the homicide, but that he became more excitable as time went on.

ID.—PRESUMPTION DEPENDENT UPON NATURE OF INSANITY.—Whether insanity once proven is presumed to continue is determined by the nature of the disease. If it is occasional or intermittent insanity no such presumption arises; but the rule is otherwise in cases of confirmed insanity of whatever nature.

APPEAL from a judgment of the Superior Court of Yuba County, and from an order denying a new trial.

The facts are stated in the opinion of the court.

*M. C. Barney, Grove L. Johnson,* and *C. A. Webb,* for Appellant.

*Attorney General W. H. H. Hart, E. P. McDaniel,* and *District Attorney E. A. Forbes,* for Respondent.

PATERSON, J.—An information was filed in the court below charging the defendant with the crime of murder, but the same was dismissed by the court on motion of the defendant, on the ground that the defendant had not been legally committed by a magistrate. It appears that the only irregularity in the proceedings before the justice of the peace consisted in the failure of the latter to make a proper indorsement of the commitment upon the complaint at the conclusion of the examination. The court, therefore, ordered that the papers be sent back to the justice of the peace for proper indorsement, and that upon return of the same to the superior court, the district attorney should file another information. This was done by the district attorney, and we think the court properly denied the motion to set aside the second information. It was unnecessary to go into another examination upon the same charge. (*People* v. *Thompson,* 84 Cal. 598; Pen. Code, sec. 997; *People* v. *Kilvington,* No. 21033, this day filed.)

The court did not err in permitting the witness, Williams, to give testimony relating to Flowers, who was killed at the same time and in the same affray which resulted in the killing of Foulk. The testimony of this witness, as well as that of Hawkins and Barricklo, was necessary in order that the jury might understand the

transaction. The affray occurred in the dark; many shots were fired; two persons were killed and one wounded. Three pistols were introduced in evidence of different calibers; each contained a number of empty and a number of loaded càrtridges. To determine whether or not the defendant killed Foulk it was necessary that the jury should be put in possession of all the facts and circumstances; and to do this, the condition of the ground and the finding of the body of Flowers were necessarily referred to.

It is urged that the court erred in allowing the prosecution to cross-examine Dr. Danforth as to the nature of the complaint for which he treated the defendant. It is claimed that the testimony was " irrelevant, immaterial, and incompetent, being a privileged communication between patient and physician." There is no merit in the contention. The rule as to privileged communications between patient and physician does not apply in criminal cases. The chapter on Witnesses in the Civil Procedure limits the rule to *civil actions* (sec. 1881, subd. 4), and the Penal Code, which expressly preserves the rule as to husband and wife in the chapter determining " who may be witnesses in criminal actions," makes no mention of physician and patient. (*Freel* v. *Market St. Ry. Co.*, 97 Cal. 40.) At common law the rule as to physicians was not observed in either civil or criminal cases. (3 Rice on Evidence, sec. 209.) The statutory privilege was not conferred to shield a person charged with the murder of another (*People* v. *Harris*, 136 N. Y. 448), and it certainly was not intended to be used as a weapon against one charged with crime.

We do not think the court erred in permitting certain witnesses to give their opinions as to the mental condition of the defendant. It was shown that they were acquainted with the defendant, and had more or less opportunity for acquiring knowledge on which to base an opinion. As was said in *Estate of Carpenter*, 94 Cal. 416: "A very large discretion must be conceded to the trial court." (See, also, *People* v. *Pico*, 62 Cal. 53.)

The evidence of acts and declarations of Dynelly was competent and material.  There was evidence tending to show joint preparations on the part of the defendant and Dynelly to kill Foulk.  The two met on the picnic grounds prior to the shooting, and approached the deceased together with revolvers drawn.  Proof of a conspiracy, like any other fact, may be accomplished by circumstantial evidence.  Our attention has not been called to any act or declaration on the part of Dynelly which was inadmissible, if the jury believed, as they might well believe under the evidence, that there was a conspiracy between him and the defendant to kill Foulk.

One of the points—perhaps the main point—relied upon by the defense for a reversal is, that the court erroneously permitted the prosecution in rebuttal to prove that the defendant had committed the crime of incest with his daughter.  It is claimed that nothing brought out in the defense justified the introduction of such evidence; that it is an attempt to prejudice the jury against the defendant by showing that he had committed other offenses, and not of the same nature as the one for which he was on trial.  But we think that the evidence was relevant, material, and properly given in rebuttal.  It was the claim of the defense that the defendant had become insane through fear that the deceased was trying to debauch his (defendant's) daughter.  If the prosecution could show that as a matter of fact the defendant had committed the crime referred to, the jurors might fairly infer that he was of such a nature that, conceding it to be true that the *deceased* had illicit, or was trying to have illicit, intercourse with his daughter, the knowledge of the fact would not have the effect of unbalancing his mind; or the jury might have fairly inferred, if they believed the charge to be true, that the defendant's motive in attacking the deceased was not that entirely of a parent desirous of protecting the virtue of his daughter.  Evidence which tends to show a material fact or motive, although it tends to prove the

commission of another offense by the defendant, is relevant and admissible in a criminal action. (*People* v. *Harris*, 136 N. Y. 448; 3 Rice on Evidence, sec. 216; *People* v. *McGilver*, 67 Cal. 55; *People* v. *Rogers*, 71 Cal. 565.)

The attention of the court was not called to the objectionable remarks of the prosecuting attorney in his argument to the jury. The learned judge was at the time engaged in examining the instructions, and, so far as the record shows, knew nothing about the fact. No opportunity was given the court, therefore, to prevent or correct the abuse.

The 29th instruction given by the court is not in conflict with the decision in *People* v. *Bushton*, 80 Cal. 160, but, on the contrary, is in line therewith.

The court's modification of the 18th instruction asked by the defendant neither added any thing thereto nor did it take any thing away, but if it rendered the instruction unintelligible, as appellant now insists, no prejudice resulted. The court fully instructed the jury that the plea of not guilty puts in issue every allegation, " and compels the prosecution to prove every element necessary to make up the crime charged."

The first instruction asked by the defendant, and refused, was fully covered by other instructions.

The only action of the court upon which there can arise any serious question, we think, was its modification of the 21st instruction asked by the defendant. The instruction as presented reads: " I further instruct you, gentlemen of the jury, that if you find from the evidence that the defendant was insane at a period before the homicide in question, then in that case his insanity is presumed to have continued." To that the court added these words: " Up to the time of the homicide, provided the exciting cause of such insanity also exists up to the time of the homicide."

Whether insanity at a period before the homicide is presumed to have continued up to the time of the homicide is determined by the nature of the disease. If the

insanity results from some temporary or transient cause no such presumption arises. The rule does not apply to cases of an occasional or intermittent insanity, but does apply to cases of confirmed insanity of whatever nature. (*The Physio-Medical College* v. *Wilkinson,* 108 Ind. 319.) In *People* v. *Francis,* 38 Cal. 188, it appears the court below had been requested to instruct the jury that "insanity once shown to exist is presumed to continue until the contrary is shown," and the court held that if the term insanity referred to a general unsoundness of mind, and not to an aberration of a temporary nature proceeding from some transient cause, the instruction correctly stated the law; that if the intellectual faculties were so impaired as to produce a general, habitual derangement of them, not traceable to some temporary cause, the law would presume the mind to have continued in the same condition until the contrary was shown.

In the view which we take of the case, however, the instruction, if conceded to be erroneous in the abstract, could not possibly have prejudiced the defendant. There is evidence tending to show that the defendant was somewhat deranged a year or more prior to the time of the homicide, but the evidence all shows that the defendant became more excitable as time went on and his family troubles increased. The jury must have believed, if they believed any of the evidence as to the condition of the defendant's mind, that his mind was in a worse condition at, and just prior to, the time of the homicide than ever before.

Judgment and order affirmed.

HARRISON, J., and GAROUTTE, J., concurred.

Hearing in Bank denied.