[Crim. No. 1547.   Fourth Dist.   June 28, 1960.]

THE PEOPLE, Respondent, v. VINCENT GONZALES, Appellant.

Carroll & Anderson and Thomas T. Anderson for Appellant.

Stanley Mosk, Attorney General, William E. James, Assistant Attorney General, and Doris H. Maier, Deputy Attorney General, for Respondent.

SHEPARD, Acting P. J.—Defendant was found guilty by jury verdict of a violation of Health and Safety Code, section 11500 (possession of narcotics, i.e., marijuana). By its judgment, the court granted to defendant straight probation for three years without any time in custody and without any fine. Defendant appeals.

## FACTS

There is no substantial conflict in the evidence as to the salient facts of the case. The record before us shows that on May 24, 1959, in the 300 block on East Tachevah Avenue in Palm Springs, a red corvette automobile was discovered off the road, against a tree, with defendant lying on his back outside the car but with his feet still in the car. Defendant was severely injured by a 24-inch cut across his abdomen that appeared to have been inflicted by a knife. Defendant's intestines were protruding from the wound. One portion of the

evidence described defendant as being unconscious. Another portion described him as not completely unconscious but in severe shock from loss of blood, and apparently unable to answer routine questions. An ambulance was called by the police. The ambulance driver and his attendant placed defendant on a stretcher and took him to a hospital. At the hospital he spoke his name, asked for water, and mumbled something unintelligible.

While still on the stretcher the portion of his clothing not confined beneath his body was cut away and gone through for purposes of identification. A cellophane package containing a quantity of marijuana was found in his righthand front pants pocket but identifying information was not found. A short time later, after a doctor supervised his placement on the operating table and preparation for surgery, the balance of his clothing was removed and gone through for identification. Among other articles were found his wallet, with identification, and four marijuana cigarettes. The doctor, two nurses and a police officer were present. While a police officer was present during all this time, he did no searching himself. Apparently he did, however, request the attendant to search for identification, which incidentally resulted in the finding of the marijuana. The ambulance driver testified that the search was routine procedure for identification of injured people "in shock" in emergency cases. After the finding of the marijuana, all articles taken from defendant were turned over to the police officer for safekeeping. The officer learned of defendant's name and the circumstances preceding the accident after the finding of the marijuana. The defendant remembers nothing from the time of the accident until after hospital surgery was completed. He was not under arrest at any time while the search was in progress. Sometime later the officers were informed that the wound in the abdomen was received in a fight and that defendant attempted, after he received the wound, to drive to medical aid, fainted while driving and ran into the tree where he was found.

### Was the Search Legal?

Defendant contends the offending narcotics were discovered during an unlawful search and therefore were erroneously admitted as evidence. ██ It is true that if a search is unlawful the discovery of contraband cannot make the search legal. (*People* v. *Brown*, 45 Cal.2d 640, 643 [3] [290 P.2d 528].) ██ However, lawful searches are not confined to those incidental to arrest. (*People* v. *Ball*, 162 Cal.App.2d

465, 467 [1-2] [328 P.2d 276].) As to the particular circumstances of the case at bar, hospitals are required to report to police respecting any person suffering from an injury inflicted by a knife, gun, pistol or other deadly weapon, the name of the injured person, if known, his whereabouts and the character and extent of his injuries. Failure to do so is a misdemeanor. (Pen. Code, §§ 11160-11162.)

Every person in charge of a hospital is required to make a record of the person, medical and other information for each patient sufficient and adequate for the completion of a birth or death certificate. The requirements of section 10275 of the Health and Safety Code respecting death certificates include, among other extensive details, information as to relatives, marital status, birthplace, usual residence, occupation and industry or business. Similar extensive detail is required by section 10125 of the same code.

█ Under Civil Code, sections 1815 and 1816, a hospital would undoubtedly become the involuntary bailee of property carried on the person of an unconscious patient brought to it under conditions of emergency such as are here present. To take such property from the clothing of the patient, make a written list of it and put it in a safe place or hands for preservation would be the normal and reasonable act of a hospital attendant for the protection of both the hospital and the patient. Criticism of a hospital for such an act, we believe to be completely unwarranted.

█ Certainly the circumstances of this accident, with a man found in defendant's condition, either unconscious or nearly so with a ghastly and possibly fatal wound apparently caused by a knife, would place any alert and conscientious officer on inquiry. The first step in the inquiry would be to clearly identify the victim. A failure to do so would subject the officer to severe censure. █ As was said in *People* v. *West*, 144 Cal.App.2d 214, 220 [9] [300 P.2d 729] :

"Police officers are guardians of the peace and security of the community and are concerned with criminals in a complex society— '. . . and the efficiency of our whole system, designed for the purpose of maintaining law and order, depends upon the extent to which such officers perform their duties and are faithful to the trust reposed in them. Among the duties of police officers are those of preventing the commission of crime, of assisting in its detection, and of disclosing all information known to them which may lead to the apprehension and punishment of those who have transgressed our laws. . . . It is

for the performance of these duties that police officers are commissioned and paid by the community, . . . .' ''

Reasonableness is not a mere matter of abstract theory but a practical question to be determined in each case in the light of its own circumstances. (*United States* v. *Yee Ngee How,* 105 F.Supp. 517.)

''The constitutional guaranties protect the individual only from searches and seizures that are 'unreasonable,' which may be taken generally to mean 'unlawful,' and the law authorizes many types of reasonable inspections, examinations, investigations, searches and seizures without warrant, either from practical considerations of convenience and common sense or by statutes, rules, or regulations adopted in the exercise of the state's police power.'' (44 Cal.Jur.2d 303, 304, Searches & Seizures, § 22.)

An officer who is making or is present at a reasonable search is not required to close his eyes to contraband he discovers simply because it is not connected with the initial purpose of the search. (*People* v. *Ortiz,* 147 Cal.App.2d 248, 250 [2] [305 P.2d 145]; *People* v. *Roberts,* 47 Cal.2d 374 [303 P.2d 721]; *People* v. *Simpson,* 170 Cal.App.2d 524, 530 [3] [339 P.2d 156].) Even though a search was authorized for one purpose, the seizing of the contraband found in that search would not be a violation of defendant's constitutional rights.

''Even though the search of the apartment was authorized for one purpose, the taking of contraband found in that search would not be a violation of defendant's constitutional rights. The evidence was admissible against defendant in this action.'' (*People* v. *Collier,* 169 Cal.App.2d 19, 22 [3] [336 P.2d 582].)

There is no question as to the application of physician-patient privilege since this privilege does not apply to criminal cases. (Code Civ. Proc., § 1881, subd. 4; *People* v. *Lane,* 101 Cal. 513, 516 [36 P. 16]; *People* v. *Dutton,* 62 Cal. App.2d 862, 863 [1] [145 P.2d 676]; *People* v. *West,* 106 Cal. 89, 91 [39 P. 207].)

We conclude that the search was not unreasonable and was lawful; that the evidence accidentally found thereby was contraband; that it was not unlawfully seized; and that it was properly admitted into evidence.

The judgment is affirmed.

Coughlin, J., and Shea, J. pro tem.,* concurred.

*Assigned by Chairman of Judicial Council.