[No. AO18022. First Dist., Div. One. Oct. 17, 1983.]

MARIA M. CREGG, Plaintiff and Appellant, v.
MINISTOR VENTURES, Defendant and Respondent.

**COUNSEL**

Jack Siedman for Plaintiff and Appellant.

Steven Finley, David Barry and Barry & Finley for Defendant and Respondent.

**OPINION**

**ELKINGTON, J.**—Plaintiff Maria M. Cregg appeals from an adverse summary judgment in her action against defendant Ministor Ventures, a part-

nership or joint venture, engaged in the business of leasing space to others for storage of personal and household goods. The action sought $75,000 in damages based on Ministor Ventures' claimed negligence and breach of warranty. It arose out of the loss by theft of plaintiff's property stored in space leased to her by Ministor Ventures.

At the summary judgment proceedings, sworn declarations of defendant established the following factual context.

Plaintiff had leased from defendant certain storage space at the monthly rental of $17. Among other things, the lease provided: "6. This LEASE AGREEMENT is made on the express condition that LESSOR shall be free from all liability and claims for damages by reason of injuries of any kind to any persons, including LESSEE or property of any kind whatsoever and to whomever belonging, including LESSEE, from any cause or causes whatsoever while in, upon or in any way connected with the premises, during the term of this LEASE AGREEMENT or any extension thereof, or any occupancy hereunder. LESSEE hereby agrees to save and hold LESSOR harmless from any liability, loss, cost or obligation on account of or arising out of any such injuries or losses however occurring. LESSEE shall, at his sole expense, maintain his own insurance on the property stored on the premises, and LESSOR shall not be responsible for theft or damage, if any, to said property caused by . . . any cause whatsoever. . . ."

At the time of the lease's execution, defendant's resident manager expressly pointed out, and explained, to plaintiff its above-quoted paragraph 6, and emphasized "that there was no insurance on her property stored at the facility, and that she would have to buy her own insurance." Lessees were permitted to purchase their own insurance elsewhere, or it would be furnished, or arranged for, by the lessor at a premium of "$2 per month per $1,000 coverage." Defendant's resident manager further declared: "When I explained to the plaintiff that she would have to buy her own insurance, I pointed out to her, as I do with all lessees of space at the facility, that 'Customer Storage Insurance' was available through Mini Storage Insurance Corporation of Phoenix, Arizona. The application form and description of that insurance was at that time, March 2, 1979, in a display box on the counter of my office, and was pointed out to the plaintiff. The display box was prominently marked 'Please Take One—Protect Your Property—Insurance is Your Responsibility.' Attached to this declaration as Exhibit B is a true and correct copy of the insurance application form and description of insurance which was on the counter of my office at the time."

(We have attached the above-noted "Exhibit B," as a supplement to this opinion.)

The responsive sworn declaration of plaintiff follows:

"I, Maria M. Cregg, declare and say:

"I am the plaintiff in the above-entitled action. I have a small home located at 245 Larch Road, Bolinas, and some unimproved land located in Honeydew, Humboldt County, California. Neither of these properties has any room or structure for me to store many of my personal belongings, nor am I financially able to purchase larger living quarters suitable for storing such property.

"Because of my need to safely store and secure my personal possessions I decided to rent suitable storage space. In the early part of 1979, I looked through the Marin County Yellow Pages and saw the advertisement for Mini-Stor, located at 990 Andersen, San Rafael. . . . Because the ad promised 'secure' self-storage, including double locked units for 'extra security,' I decided to contact Mini-Stor.

"When I went to the premises the manager represented the safety and security of the storage spaces, and assured me that the public could not enter the storage area directly from the street. I then signed the lease agreement . . ., but do not recall being handed any application or other document regarding separate insurance.

"Thereafter, I used the storage space (24F) to keep my personal belongings, periodically removing and replacing them as needed. Sometime in October 1980, I learned that my storage space had been broken into and my property taken. According to Mr. Tynes, the caretaker, and as set forth in the crime report of the San Rafael Police Department . . ., someone apparently entered storage area 24 through an unlocked common door to the area and broke the locks off four spaces, including mine.

"I believe Mr. Tynes told me he was not present at the premises from September 1, 1980 through September 6, 1980, and therefore he was unable to determine on what date during that time the theft actually occurred.

"Because the door to area 24 was left unlocked, and because the premises were not adequately and reasonably supervised, I believe defendant failed to provide me with the safe and secure storage of my property as promised."

At the summary judgment proceedings, plaintiff relied upon Civil Code section 1668 which states: "All contracts which have for their object, directly or indirectly, to exempt anyone from responsibility for his own fraud,

or willful injury to the person or property of another, or violation of law, whether willful or negligent, are against the policy of the law."

■ It is held that: "Despite its broad language, section 1668 does not apply to every contract." (*Vilner* v. *Crocker National Bank* (1979) 89 Cal.App.3d 732, 735 [152 Cal.Rptr. 850]; see also *Tunkl* v. *Regents of University of California* (1963) 60 Cal.2d 92 [32 Cal.Rptr. 33, 383 P.2d 441, 6 A.L.R.3d 693], *passim.*) It will be applied only to contracts that involve "the public interest." (*Tunkl* v. *Regents of University of California, supra,* p. 96; *Belshaw* v. *Feinstein* (1968) 258 Cal.App.2d 711, 727 [65 Cal.Rptr. 788].)

The concept of a contract involving the public interest is surely difficult to define. (See *Tunkl* v. *Regents of University of California, supra,* 60 Cal.2d at p. 98.) But by that authority we are furnished aids in our determination. Important considerations, in determining whether there is such a public interest, exist where the following circumstances are found in relation to the party seeking to apply the exculpatory clause: His business is ordinarily subject to regulatory treatment; he has the advantage of a superior bargaining position; he makes no provision under which the other "may pay additional reasonable fees and obtain protection against negligence"; or where the other party is compelled to accept the exculpatory clause or reject the contract in its entirety. (See *Tunkl* v. *Regents of University of California, supra,* pp. 98-101.)

And where the contract is not affected with such a public interest—"no public policy opposes private, voluntary transactions in which one party, for a consideration, agrees to shoulder a risk which the law would otherwise have placed upon the other party, . . ." (*Tunkl* v. *Regents of University of California, supra,* p. 101.)

■ Here plaintiff was afforded the option by defendant of greater monthly payments under the lease with insurance or of purchasing insurance elsewhere, and she was not subjected to an adhesive contract under which she must accept the exculpatory clause or forego the lease. And otherwise, in our opinion, it may not reasonably be said that the subject lease involved "the public interest."

It follows that the summary judgment must be affirmed.

Affirmed.

Racanelli, P. J., and Holmdahl, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied December 14, 1983.