[No. A031458. First Dist., Div. Five. Sept. 24, 1986.]

JACK PELLETIER et al., Plaintiffs and Appellants, v.
ALAMEDA YACHT HARBOR et al., Defendants and Respondents.

COUNSEL

Paul N. Halvonik, Deborah Halvonik and Halvonik & Halvonik for Plaintiffs and Appellants.

Ernest N. Reddick, Richard C. Wootton and Derby, Cook, Quinby & Tweedt for Defendants and Respondents.

OPINION

KING, J.—In this case we hold that (1) a contractual provision purporting to exculpate a yacht harbor from tort liability to a boat owner was void by statute because it involved the public interest, and (2) stipulated judgment of unlawful detainer had no collateral estoppel effect as to a subsequent cause of action for retaliatory eviction.

Jack and Mary Ann Pelletier appeal from a judgment in their action against Alameda Yacht Harbor (AYH) for negligence and retaliatory eviction. They challenge the court's rulings that (1) a contractual exculpation clause insulated AYH from liability for negligence, and (2) the cause of action for retaliatory eviction was precluded by collateral estoppel. We reverse.

On January 27, 1977, Jack Pelletier signed an agreement with AYH for the lease of a covered berth for a boat which he intended to restore. The lease agreement contained a broad exculpation clause purporting to absolve AYH of liability for any damage to the boat. The clause provided in full: "This agreement is for rental of space only, such space is to be used at the sole risks of the Licensee of said vessel, and the Licensor shall not be liable or responsible for the care or protection of the boat (including her gear, equipment and contents) nor for any loss or damage of whatever kind or nature to said boat, her contents, gear or equipment, howsoever occasioned."

The boat sank at its berth on two occasions, the first on September 24, 1978, and the second on December 6, 1979. Pelletier claims the sinkings were caused by vandalism which was made possible by inadequate harbor security. AYH contends the sinkings were "most likely" due to unfloatworthiness of the boat.

On May 22, 1980, AYH filed a complaint against Pelletier for unlawful detainer. In his answer Pelletier asserted an affirmative defense that the action was retaliatory. The matter did not proceed to trial, however, but was disposed of by stipulated judgment filed August 11, 1980, providing for AYH's recovery of possession after a period of six months.

On September 17, 1980, the Pelletiers filed a complaint against AYH for negligence and retaliatory eviction. In an order granting summary adjudication the court dismissed the cause of action for retaliatory eviction, on the basis that it was precluded by collateral estoppel effect of the stipulated judgment in the unlawful detainer action.

The case proceeded to a nonjury trial on the negligence cause of action, but the court did not decide the negligence issues. Instead, the court rendered judgment for AYH on the basis that the exculpation clause in the lease agreement absolved AYH of any liability for negligence.

## I.

 The Pelletiers contend the court erred in rendering judgment for AYH based on the exculpation clause because the clause is void by operation of Civil Code section 1668. That statute provides, "All contracts which have for their object, directly or indirectly, to exempt anyone from the responsibility for his own fraud, or willful injury to the person or property of another, or violation of law, whether willful or negligent, are against the policy of the law."[1]

Over the years courts have disagreed as to whether section 1668 proscribes all or only some contractual exemptions from negligence liability. (See *Tunkl v. Regents of University of California* (1963) 60 Cal.2d 92, 95-96 [32 Cal.Rptr. 33, 383 P.2d 441, 6 A.L.R.3d 693].) One point, however, is well-established: an exculpation clause is void under section 1668 if it involves "the public interest." (*Id.,* at pp. 96-101.)

In *Tunkl* the California Supreme Court set forth six guidelines for determining whether a exculpation clause involves the public interest. The court said the clause is void under the public interest rule if the underlying transac-

---

[1] AYH contends federal maritime law rather than California state law applies here and supports the exculpation clause. However, AYH did not assert the applicability of federal maritime law below, and thereby waived this claim. The law of the forum state applies unless a litigant makes a timely request to invoke the law of another jurisdiction. A request made for the first time on appeal is untimely. (*Danzig* v. *Jack Grynberg & Associates* (1984) 161 Cal.App.3d 1128, 1139 [208 Cal.Rptr. 336]; *Estate of Patterson* (1980) 108 Cal.App.3d 197, 207 [166 Cal.Rptr. 435].)

tion "exhibits some or all of the following characteristics. It concerns a business of a type generally thought suitable for public regulation. The party seeking exculpation is engaged in performing a service of great importance to the public, which is often a matter of practical necessity for some members of the public. The party holds himself out as willing to perform this service for any member of the public who seeks it, or at least for any member coming within certain established standards. As a result of the essential nature of the service, in the economic setting of the transaction, the party invoking exculpation possesses a decisive advantage of bargaining strength against any member of the public who seeks his services. In exercising a superior bargaining power the party confronts the public with a standardized adhesion contract of exculpation, and makes no provision whereby a purchaser may pay additional reasonable fees and obtain protection against negligence. Finally, as a result of the transaction, the person or property of the purchaser is placed under the control of the seller, subject to the risk of carelessness by the seller or his agents." (*Id.,* at pp. 98-101; fns. omitted.)

■ Thus, the determination whether the present exculpation clause involves the public interest requires analysis of each of the six *Tunkl* guidelines.

1. "*It concerns a business of a type generally thought suitable for public regulation.*" This characteristic is clearly present. The business of operating private wharfs and piers is subject to public regulation under Harbors and Navigation Code section 4000 et seq.

2. "*The party seeking exculpation is engaged in performing a service of great importance to the public, which is often a matter of practical necessity for some members of the public.*" AYH contends this factor requires that the service at issue be a "necessity of life," relying on *Henrioulle* v. *Marin Ventures, Inc.* (1978) 20 Cal.3d 512, 518 [143 Cal.Rptr. 247, 573 P.2d 465]. But the court in *Henrioulle* simply held that the residential rental agreement in that case met the second of the *Tunkl* criteria because "[a] lessor of residential property provides shelter, a basic necessity of life...." (*Ibid.*) The opinion did not purport to modify the less stringent requirement stated in *Tunkl,* that the service may simply be "a matter of practical necessity for some members of the public." (*Tunkl* v. *Regents of University of California, supra,* 60 Cal.2d at p. 99; see *Gardner* v. *Downtown Porsche Audi* (1986) 180 Cal.App.3d 713, 717-718 [225 Cal.Rptr. 757].) For persons with boats, the availability of berths in harbors is a matter of practical necessity. Thus the second *Tunkl* factor is present here.

3. "*The party holds himself out as willing to perform this service for any member of the public who seeks it, or at least for any member coming within*

*certain established standards.*" This criterion is obviously present, and in fact discrimination against certain members of the public would violate Civil Code section 51.

4. "*As a result of the essential nature of the service, in the economic setting of the transaction, the party invoking exculpation possesses a decisive advantage of bargaining strength against any member of the public who seeks his services.*" Jack Pelletier testified that berths of the size involved here—42 feet—are not easy to obtain, that during a nine-month period before removing his boat from AYH he unsuccessfully sought berths in six other East Bay harbors, and that the vessel was stored on land through the time of trial. A former employee of AYH testified that in 1977 through 1979 the vacancy rate at AYH was low. This evidence established that a 42-foot berth —a matter of practical necessity to certain boat owners—was not easily obtainable, so that AYH possessed a decisive advantage of bargaining strength against any persons seeking a berth of that size. AYH does not point to any contrary evidence in the record, but simply makes the bare assertion in its brief that Pelletier "might have taken his vessel elsewhere."

5. "*In exercising a superior bargaining power the party confronts the public with a standardized adhesion contract of exculpation, and makes no provision whereby a purchaser may pay additional reasonable fees and obtain protection against negligence.*" The lease agreement between Pelletier and AYH was a standard form. It contained no provisions permitting Pelletier to pay additional fees and obtain protection against negligence by AYH. This factor distinguishes the present case from *Cregg* v. *Ministor Ventures* (1983) 148 Cal.App.3d 1107 [196 Cal.Rptr. 724], upon which AYH relies as an example of a commercial lease not involving the public interest. In *Cregg* a lessee of space for storage of personal goods was afforded the opportunity to avoid an exculpation clause by purchasing insurance through the lessor in exchange for an increase in the monthly payments due under the lease. (*Id.,* at pp. 1109, 1111.) Here, AYH gave the lessee no such opportunity.

6. "*Finally, as a result of the transaction, the person or property of the purchaser is placed under the control of the seller, subject to the risk of carelessness by the seller or his agents.*" Pelletier's boat was placed under the control of AYH and was thus subject to the risk of carelessness by AYH.

The present transaction exhibits all six of the *Tunkl* characteristics. Accordingly, the exculpation clause involves the public interest and is void under Civil Code section 1668. (*Gardner* v. *Downtown Porsche Audi, supra,* 180 Cal.App.3d at pp. 717-719.) The trial court erred in ruling to the contrary.

AYH, claiming any alleged negligence was passive, relies on *Barkett* v. *Brucato* (1953) 122 Cal.App.2d 264 [264 P.2d 978], which held that Civil Code section 1668 precludes exemption from liability for active negligence but permits such exemption for passive negligence. This holding was acknowledged in *Tunkl* v. *Regents of University of California, supra,* 60 Cal.2d at page 96 and footnote 5, as one of the numerous ways in which courts had previously construed section 1668. But *Tunkl* establishes that *any* exculpation provision is invalid if it involves the public interest; the court did not recognize an exception for exemptions from liability for passive negligence. *Barkett* may still be valid to the extent it precludes any exemption from liability for active negligence, but after *Tunkl* it cannot be said that section 1668 permits exemption from liability for passive negligence where the underlying transaction involves the public interest. (See *Gardner* v. *Downtown Porsche Audi, supra,* 180 Cal.App.3d at p. 716.) Indeed, such a construction would render *Tunkl* meaningless: the public interest rule would not apply in cases of passive negligence, and *Barkett* alone would preclude exemption in cases of active negligence.

## II.

The Pelletiers also contend correctly that the court erred in granting summary adjudication and dismissing the cause of action for retaliatory eviction based on collateral estoppel effect of the stipulated judgment in the unlawful detainer proceeding.

Because an unlawful detainer action is a summary procedure involving only claims bearing directly upon the right of immediate possession, a judgment in unlawful detainer has very limited res judicata effect. Legal and equitable claims—such as questions of title and affirmative defenses—are not conclusively established unless they were fully and fairly litigated in an adversary hearing. (*Vella* v. *Hudgins* (1977) 20 Cal.3d. 251, 255-257 [142 Cal.Rptr. 414, 572 P.2d 28].) Here, the unlawful detainer action was resolved by stipulated judgment which made no mention of a relinquishment by the Pelletiers of claims arising from a retaliatory eviction. The retaliation defense was not fully and fairly litigated in an adversary hearing, and thus was not conclusively established. (Compare *Zimmerman* v. *Stotter* (1984) 160 Cal.App.3d 1067 [207 Cal.Rptr. 108] [right to possession not subject to relitigation where *fully litigated and determined by jury* in unlawful detainer proceeding].) The court erred in dismissing the cause of action for retaliatory eviction.

The judgment is reversed. The cause is remanded with directions to (1) reinstate and proceed to trial on the cause of action for retaliatory eviction,

and (2) determine the negligence issues on the negligence cause of action. Appellants shall recover their costs on appeal.

Low, P. J., and Haning, J., concurred.