[No. A047880. First Dist., Div. Five. Aug. 13, 1990.]

SCOTT SACKETT, Plaintiff and Appellant, v.
PUBLIC STORAGE MANAGEMENT et al., Defendants and
Respondents.

**COUNSEL**

Hanson, Bridgett, Marcus, Vlahos & Rudy and James Attridge for Plaintiff and Appellant

Donahue, Gallagher, Thomas & Woods, Andrew W. Lafrenz and Renee D. Wasserman for Defendants and Appellants.

**OPINION**

**KING, J.**—In this case we hold that the contract between the operator and renter of a public storage unit defines their legal relationship. Thus, when the renter's storage unit lock was rendered inoperable by vandalism and the operator placed its own lock on the unit, the provisions of their contract controlled and no involuntary bailment was created.

This is an action for negligence for the loss of Scott Sackett's personal property which was stolen while stored in a self-service storage unit

operated by Public Storage Management (PSM). The trial court granted summary judgment to PSM on the basis that the contract between the parties insulated PSM against liability for the loss and that PSM did not assume an obligation to protect Sackett's goods by temporarily placing its own lock on his storage unit. We affirm.

The facts are undisputed. PSM operates a self-service storage facility in Pinole. On September 9, 1987, Sackett entered into a written rental agreement to rent storage space at PSM's facility. The agreement provided:

(1) PSM would not be liable for any loss of Sackett's property due to theft or PSM's negligence;

(2) Sackett would maintain insurance to the extent of at least 100 percent of the actual cash value of the goods stored;

(3) To the extent Sackett failed to obtain insurance, he was deemed to be self-insured and assumed the risk of loss or damage;

(4) Sackett agreed the goods stored did not exceed $5,000 in value;

(5) Sackett expressly released PSM from any claims that would have been covered by insurance, including burglary.

Sackett stored personal belongings in the storage unit and secured the unit with his own lock, as required by the terms of the contract. The unit was accessible to the public including, at the very least, those who rented other units within the facility. On or about November 27, 1987, Sackett's unit and other neighboring units were broken into. The hasps on several units, including Sackett's, were torn from the doors, rendering the locks inoperable. Thereafter, the managers of PSM's facility placed one of their own padlocks on Sackett's unit.

On November 28, 1987, PSM notified Sackett by letter that it appeared his unit had been entered, and the lock tampered with, and a company lock had been placed on the unit. The letter requested him to inspect the unit for possible theft or damage as soon as possible and to replace the company lock with one of his own.

Since Sackett was living in Krum, Texas, he asked a friend, Jack Walker, to visit the facility and check on his goods in his stead. Upon inspection, Walker determined nothing was missing from the unit. Walker had purchased a lock for the unit to replace PSM's lock, but his lock was too big. As a result, PSM's lock was placed back on the unit. On January 2, 1988,

Sackett came to PSM's facility to reclaim his belongings. When his unit was opened, he discovered it had been emptied of its contents.

Sackett's complaint alleged PSM "assumed a duty of reasonable care over [his] personal property" by placing its own lock on his storage unit. He further contended PSM breached its duty of care by failing to secure his property adequately, resulting in a loss in excess of $25,000.

PSM moved for summary judgment, claiming as a matter of law that it could not be found negligent because the rental agreement entered into by the parties on September 9, 1987, was a binding contract which relieved PSM and its agents from any liability resulting from their negligence. Sackett opposed the motion and filed a cross-motion for summary adjudication of issues. In effect, Sackett argued that because PSM chose to secure his storage unit subsequent to an extraordinary act (the burglary) with PSM's own lock, PSM became an involuntary bailee under Civil Code section 1815 and *Gordon H. Ball, Inc.* v. *Parreira* (1963) 214 Cal.App.2d 697 [29 Cal.Rptr. 679]. He contended the rights and duties of the parties were no longer defined by the terms of the rental agreement; instead, they were defined by the common law of bailment. The trial court found as a matter of law that no bailment was created which supplanted the written agreement of the parties, and the court granted summary judgment for PSM. This appeal followed.

■ "A defendant is entitled to summary judgment if the record establishes as a matter of law that none of the plaintiff's asserted causes of action can prevail. [Citation.] To succeed, the defendant must conclusively negate a necessary element of the plaintiff's case, and demonstrate that under no hypothesis is there a material issue of fact that requires the process of trial. [Citation.]" (*Molko* v. *Holy Spirit Assn.* (1988) 46 Cal.3d 1092, 1107 [252 Cal.Rptr. 122, 762 P.2d 46].) The issues in this case are straightforward. Sackett freely admits that if his undisputed evidence is legally insufficient to establish a bailment, the rental agreement entered into by the parties governed their relationship on the date of the loss and "the plaintiff is out of luck." (See *Cregg* v. *Ministor Ventures* (1983) 148 Cal.App.3d 1107, 1111 [196 Cal.Rptr. 724] [upholding an almost identical contract].) If, on the other hand, PSM's act in securing Sackett's storage unit with its own lock created a bailment, the necessary foundation for PSM's liability for breach of the duty of care is established.

The cornerstone of Sackett's argument that a bailment was created by operation of law is Civil Code section 1815. Under subdivision 2 of this section an involuntary bailment is created "[i]n cases of fire, shipwreck, inundation, insurrection, riot, or like extraordinary emergencies, by the

owner of personal property committing it, out of necessity, to the care of any person." Sackett argues PSM became an involuntary bailee of his goods when, due to the emergency presented by the burglary, PSM took control and dominion over the goods by placing a company lock on the unsecured unit.

In support of his argument, Sackett relies on the leading involuntary bailment case, *Gordon H. Ball, Inc.* v. *Parreira, supra.* In *Ball,* the defendant was a property owner who refused to let the plaintiff's representatives remove a damaged airplane, which had made an emergency landing on his property, until payment was made for property damage resulting from the plane crash. Subsequently, while the plane remained on defendant's land, several valuable instruments attached to the aircraft disappeared. The court found the defendant implicitly consented to the creation of a bailment relationship by his refusal to permit removal of the airplane until his damages were paid, and there was sufficient prima facie evidence to show defendant breached the duty of reasonable care in bailment.

The court in *Ball* emphasized that the duties of an involuntary bailee cannot be thrust upon a party without his or her consent, but must be voluntarily assumed. As the court pointed out, "there must be some consensual act in connection with the possession of the personal property leading to a duty to exercise reasonable care with respect to it." (*Gordon H. Ball, Inc.* v. *Parreira, supra,* 214 Cal.App.2d at p. 702, quoting *Copelin* v. *Berlin Dye Works & Laundry Co.* (1914) 168 Cal. 715, 721 [144 P. 961].) In the *Ball* case, defendant's affirmative assumption and control of the airplane to the purposeful exclusion of plaintiff's representatives established the necessary foundation for creating an involuntary bailment. In another case relied on by Sackett, *People* v. *Gonzales* (1960) 182 Cal.App.2d 276, 279 [5 Cal.Rptr. 920], a hospital's act of taking personal property from an unconscious patient, making a written list of it, and putting it in a safe place provided sufficient justification to impose the duties of an involuntary bailee.

██ By contrast, in the instant case, at the time PSM allegedly assumed the obligations of an involuntary bailee, the parties' rights and duties toward one another were already governed by a written contract which insulated PSM from liability for precisely the type of loss Sackett suffered. Although we are reluctant to say that the law could *never* imply new and different obligations than those contemplated by the parties when they entered into their written contract, we can say with certainty there is nothing legally deducible from the undisputed evidence in this case to support abandoning the parties' contract and legally imposing a degree of care and diligence which greatly exceeds that called for under the contract. Here the

evidence showed PSM temporarily secured Sackett's storage unit after the lock was vandalized and then immediately asked Sackett to make his own arrangements to inventory and secure his property. In our view, PSM's act represents a simple extension of courtesy to its customers and is totally different than the unequivocal assumption of control of the bailed items found so important to the reasoning in *Ball* and *Gonzales*.

In summary, the undisputed facts presented by Sackett are legally insufficient to satisfy the necessary requirements for the creation of an involuntary bailment. Consequently, Sackett has no grounds to avoid the rental agreement which insulates PSM against liability for losses or damages resulting from theft. It was, therefore, proper to grant PSM summary judgment.

The judgment is affirmed.

Low, P. J., and Haning, J., concurred.

Appellant's petition for review by the Supreme Court was denied October 25, 1990.