Filed 11/25/19

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION EIGHT

| | |
|---|---|
| DAVID KANOVSKY et al., | B297338 |
| Plaintiffs and Appellants, | (Los Angeles County Super. Ct. No. BC640520) |
| v. | |
| AT YOUR DOOR SELF STORAGE et al., | |
| Defendants and Respondents. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, Barbara Scheper, Judge.  Affirmed.

Law Offices of Dale Washington and Dale E. Washington for Plaintiffs and Appellants.

Pettit Kohn Ingrassia Lutz & Dolin and Andrew I. Chung for Defendants and Respondents.

_____

Contracts can allocate risk. When they do, they determine who will insure against the risk, if insurance there is to be.

The contract in this case allocated risk. It specified that the company was not responsible for water damage, and that customers storing property with it did so *at their own risk*. The contract offered insurance options to the customer. The customers here declined this insurance, instead opting for self-insurance. Sure enough, water did damage the property. The customers sued the company, demanding to be paid for their losses. The trial court rejected this suit. We affirm, because one may not contract to accept risk, decide to be self-insured, and then retroactively demand to be paid by the other side *after* there is a loss.

## I

The customers were David and Shelly Kanovsky: the Kanovskys. The company was At Your Door Self Stor, or Self Stor for short.

When moving, the Kanovskys hired Self Stor in 2012. Self Stor dropped off storage "vaults" at the Kanovskys' place, which the Kanovskys filled on their own. Self Stor did not assist and had no idea what the load was.

The Kanovskys put their washing machine in one of these vaults. They had been using it before packing it away. Did the Kanovskys dry out the washer and all connections and tubing before putting it in the vault? In response to that question, Shelly Kanovsky testified the washer was "just transported from the garage" where the Kanovskys had it.

The Kanovskys locked the vaults and notified Self Stor, which picked them up for storage.

The terms of storage were formalized in a written storage agreement a driver gave the Kanovskys when delivering the vaults.  The Kanovskys ended up signing three different, but identical, copies of this agreement.

David Kanovsky signed the first copy on April 30, 2012.

We describe this document in detail.  It is two pages long. The first page has two sides.  The second has one side.

On the back of the first page of the "Storage Agreement" there is small print.  Part of that small print is paragraph four, which reads like this (with our italics):

> "4. RELEASE OF OWNER'S LIABILITY. All personal property stored within or on the facility by the Customer *shall be at the Customer's sole risk. Owner or Owner's agents shall not be liable* to the Customer for any damage or loss to any personal property while at storage facility arising from any causes whatsoever, including but not limited to, theft, fire, *water damage*, mysterious disappearance, rodents, acts of God, or the active or passive acts or omissions of the Owner or the Owner's agents.  The Customer agrees that he has read, understands and agrees to the provisions of this paragraph by placing his INITIALS here.

David Kanovsky signed his initials next to paragraph four.

Paragraph 18 is in capital letters (with our italics):

> 18.  *WATER DAMAGE*.  THESE SELF STORAGE UNITS ARE NOT WATERPROOF WHEN AT YOUR RESIDENCE!  IT IS POSSIBLE FOR THE CONTENTS TO BE WATER DAMAGED IF THERE IS ANY RAIN.  YOU MUST COVER THE UNITS

WITH PLASTIC TARPS TO PROTECT YOUR GOODS. AT YOUR DOOR SELF STOR IS *NOT RESPONSIBLE FOR ANY WATER DAMAGE.*

There is a "Customer Signature" block two lines below this clause. David Kanovsky signed there as well.

The first page has a second page attached to it. This second page is a one-sided "Addendum to Lease or Rental Agreement," in two parts. The first part is entitled:

"TENANTS STORE PROPERTY
AT THEIR RISK."

This heading is in large font and all capital letters. Below this heading are these words (with our italics):

"I understand this self-storage facility and/or its management:

"1. Is a landlord renting space, is not a warehouseman, and does not take custody of my property;

"2. *Is not responsible for loss or damage to my property*;

"3. *Does not provide insurance* on my property for me; and

"4. *Requires that I provide my own insurance* coverage or be 'Self-Insured' (personally assume risk of loss or damage)."

In the middle of this same page there is another large capitalized title:

"CHOICE OF
INSURANCE OPTIONS."

"I have been given a brochure which explains the Customer Storage Insurance available here. As initialed below, I agree to obtain insurance coverage on property in my storage space for its actual cash value or be 'Self-Insured' (personally assume risk of loss or damage)."

4

"Please initial only one."

"[box for initials is empty] Customer Storage Insurance From Deans & Homer."

"[box for initials is empty] From my own Insurance Agent."

"[box for initials has David Kanovsky's initials] Be 'Self-Insured.'"

David Kanovsky declined JBL's selection of insurance and elected to "Be Self-Insured."  He initialed the "Be Self-Insured" box and signed the Addendum at the bottom of the page.

Shelly Kanovsky signed a second copy of this document, with identical terms and with initials in the same places, on May 3, 2012.  David Kanovsky signed and initialed a third identical copy on May 7, 2012.

The Kanovskys opened the vaults in July 2016 and claimed there was water damage.  Neither the Kanovskys nor Self Stor knew when or how the damage might have occurred.  Neither did any of these people know of any incidents that might have caused the damage.

The Kanovskys sued Self Stor on four theories:  breach of contract; tortious breach of covenant; negligence; and violation of the Consumer Legal Remedies Act, Civil Code section 1750.

IAT Insurance Group intervened as Self Stor's insurer and moved for summary judgment.  The trial court granted the motion in a 20-page single spaced minute order.

II

We independently review summary judgment rulings. (*Conroy v. Regents of University of California* (2009) 45 Cal.4th 1244, 1249.)  Summary judgment motions are desirable because they can determine a case's merit without the cost and inconvenience of a trial.  (See *Perry v. Bakewell Hawthorne, LLC* (2017) 2 Cal.5th 536, 542.)  The court's ruling often gives parties

extremely helpful information about the true value of the case, which can facilitate settlement. Familiar rules govern this process. (See, e.g., Code Civ. Proc., § 437c, subds. (c) & (p)(2).)

The court's ruling was correct. The contract put the risk of water damage on the Kanovskys. They refused insurance and avoided its cost. But you cannot waive insurance, save yourself the premium, and then sue later when there is a loss after all. Consumers want insurance markets to be active and competitive, but these markets will not fare well if firms must pay insurance losses without collecting insurance premiums. Nor is retroactive insurance a viable notion.

Allowing parties to allocate risk for mutual benefit has advantages. Sometimes people may store relatively durable things like gravel or bricks that resist damage. Those people may prefer to avoid the cost of insurance to get the cheapest possible storage rate. Other situations will differ. It is a big wide world out there. A one-size-fits-all policy about risk allocation denies parties the ability to tailor the deal to their individual circumstances. Yet that is the result the Kanovskys demand: one-size-fits-all, by always making the company bear the risk.

We review the two invalid causes of action the Kanovskys discuss in their opening papers: breach of contract and the Consumer Legal Remedies Act. The Kanovskys do not mention their other causes of action (for negligence and for tortious breach of the covenant of good faith and fair dealing) and have forfeited those issues.

A

The Kanovskys devote the bulk of their briefing to their breach of contract theory. Self Stor did not breach the contract,

6

however, because the contract specified Self Stor was not liable for water damage.

The Kanovskys say we must revise the contractual language and reallocate risk to Self Stor. Legal authority is to the contrary. (*Cregg v. Ministor Ventures* (1983) 148 Cal.App.3d 1107, 1109–1112 [enforcing liability limitation in storage contract] (*Cregg*); accord, *Sackett v. Public Storage Management* (1990) 222 Cal.App.3d 1088, 1090, 1092–1093 (*Sackett*).)

The Kanovskys have no effective response to the sound legal authority of *Cregg* and *Sackett*. They attempt to distinguish these cases by saying the storage sites there were fixed rather than moveable, but this is a distinction without a difference.

The Kanovskys cite two inapplicable statutes. The first is the Self Service Storage Act, Business and Professions Code section 21701.1, which the Kanovskys concede creates no private right of action. This statute does not invalidate or affect the contract between the Kanovskys and Self Stor. The statute does have a list of requirements, but their sole relevance is to determine whether activity is or is not subject to regulation by the Public Utilities Commission. (See Bus. & Prof. Code, § 21701.1, subd. (a).) That issue is not pertinent to this case.

The second inapplicable statute is the Household Goods Carrier Act, which begins at section 5101 of the Public Utilities Code. Self Stor points out this statute too lacks a private right of action. (See former Pub. Util. Code, § 5317.5; *Julian v. Mission Community Hospital* (2017) 11 Cal.App.5th 360, 381–382.) The Kanovskys' reply effectively concedes this point by omitting contrary authority.

The Kanovskys cite many inapposite cases, as follows.

7

They cite *Tunkl v. Regents of University of California* (1963) 60 Cal.2d 92 (*Tunkl*), where a patient signed a hospital release.  The patient "at the time of signing the release was in great pain, under sedation, and probably unable to read." (*Id.* at p. 95, fn. 1; see also *id.* at p. 102 ["The admission room of a hospital contains no bargaining table where, as in a private business transaction, the parties can debate the terms of their contract."].)  *Cregg* concisely and correctly distinguished *Tunkl*. (See *Cregg*, *supra*, 148 Cal.App.3d at p. 1111.)  The Kanovskys incorrectly dismiss *Cregg*'s trenchant analysis as dictum.

The Kanovskys cite the memorable decision in *Gordon H. Ball, Inc. v. Parreira* (1963) 214 Cal.App.2d 697 (*Ball*), which is the "you keep crashing on my oats but never pay me" case.  A plane landed in an oat field near an airport.  The uninjured pilot left without speaking to farm folk.  The farmer apparently was already irked about past crash landings that caused him uncompensated crop damage.  People came for the plane.  The farmer told them to pay up, which led to a fist fight.  The farmer ordered them off his land.  Later there was reconciliation and a team returned for the plane, but by then persons unknown had looted it.  The farmer was liable for the looting because he held the plane pending payment. (*Ball*, *supra*, 214 Cal.App.2d at pp. 703–705.)

*Ball* is engaging, correct, and different from this case.  If by main force you take property hostage, you better safeguard it.  There is nothing like that here.  No one in *Ball* contracted in writing about risk allocation.  No one offered insurance options to the other side.  *Ball* has no relevance.

Similarly irrelevant is the criminal law holding in *People v. Gonzales* (1960) 182 Cal.App.2d 276.

Also immaterial is *Mehesy v. Mission Garage* (1922) 60 Cal.App. 275, 277–278, where a parking garage broke its promise to bar unauthorized people from driving a car in the garage. The garage was liable when it allowed an unauthorized person to drive and to damage the car. Here Self Stor is not liable because it did not break its promise. Different facts mean different results.

*Wilson v. Crown Transfer & Storage Co.* (1927) 201 Cal. 701, 714 supports the trial court's ruling. Long ago, the Supreme Court acknowledged the right of warehouse owners to limit their liability.

Similarly, Justice Traynor enforced a contractual allocation of risk in *George v. Bekins Van & Storage Co.* (1949) 33 Cal.2d 834, 845–850 (*George*), which supports our analysis. The Kanovskys cite *England v. Lyon Fireproof Storage Co.* (1928) 94 Cal.App. 562, but *George* disapproved that decision. (*George*, *supra*, 33 Cal.2d at p. 848.)

*Burnett v. Chimney Sweep* (2004) 123 Cal.App.4th 1057, 1065–1069, does not assist the Kanovskys because the risk allocation in that contract was equivocal where the risk allocation in this case was not.

The Kanovskys cite *Gardner v. Downtown Porsche Audi* (1986) 180 Cal.App.3d 713, 717 and 719, footnote 6, where the company made no provision for a purchaser to pay additional fees and obtain insurance against loss. This case differs from this one, where the Kanovskys needed merely to check a box and pay the rate to opt into a convenient insurance program.

In sum, the trial court rightly rejected the Kanovskys' breach of contract claim.

B

The other argument on appeal concerns the Consumer Legal Remedies Act, which begins with section 1750 of the Civil Code.  The Kanovskys treat this as an afterthought.  They devote a single sentence to their unsupported and incorrect assertion that Self Stor acted unconscionably by specifying it was not liable for water damage.

In a different argument about the Consumer Legal Remedies Act, the Kanovskys devote but two sentences to their assertion Self Stor engaged in false advertising by claiming its facilities were "climate controlled" and "weatherproof."  The Kanovskys ignore the trial court's ruling that this new allegation was not in their complaint and thus was improperly beyond the pleadings.  The trial court correctly cited case law for the familiar rule that the pleadings delimit issues to be considered on a motion for summary judgment.  Defendants moving for summary judgment need address only the issues raised by the complaint, and plaintiffs may not bring up new issues in their opposing papers.  (*Laabs v. City of Victorville* (2008) 163 Cal.App.4th 1242, 1253.)  The Kanovskys do not address this decisive point and have forfeited this argument.

**DISPOSITION**

The judgment is affirmed.  Costs to Self Stor.

WILEY, J.

We concur:

BIGELOW, P. J.                    GRIMES, J.

10