[Civ. No. 27716. First Dist., Div. Four. Apr. 7, 1970.]

THE PEOPLE, Petitioner, v.
THE SUPERIOR COURT OF THE CITY AND COUNTY OF
SAN FRANCISCO, Respondent;
TIMOTHY PEEBLES et al., Real Parties in Interest.

## COUNSEL

Thomas C. Lynch, Attorney General, Derald E. Granberg and John P. Oakes, Deputy Attorneys General, for Petitioner.

No appearance for Respondent.

Gladstein, Andersen, Leonard, Sibbett & Patsey and Richard L. Patsey for Real Parties in Interest.

## OPINION

**DEVINE, P. J.**—Timothy Peebles and William Pulliam have been charged by a grand jury indictment with conspiracy (Pen. Code, § 182), possessing a destructive device (Pen. Code, § 12303), recklessly and maliciously possessing an explosive in a public place (Health & Saf. Code, § 12304), and placing or using an explosive in or near a school (Health & Saf. Code, § 12305).

Peebles and Pulliam moved to suppress evidence under Penal Code

section 1538.5. The motion was granted in part and denied in part by the superior court. The accused persons sought a writ of mandate in this court, which we denied. The People seek a writ of mandate to set aside that part of the order which grants the motion to suppress. We have granted the alternative writ as prayed by the People.

On March 5, 1969, during the rehearsal of an opera at San Francisco State College, at about 8 p.m., two men carrying attache cases entered the Creative Arts Building. The men have been identified as Peebles and Pulliam. A few minutes after they entered, there was an explosion. One of the men ran out of the building. The other man was seriously injured. Most, or all, of his fingers were blown off. There was a smell of gunpowder in the air. A ticking sound was heard from the attache case, which was not blown up. An army squad dismantled the bomb within it.

Peebles, the injured man, identified his companion as Pulliam. He gave Pulliam's address to the police and said that it was possible that he, too, had been injured. Police officers obtained a photograph of Pulliam at the Hall of Justice, went to his apartment, confirmed that he was an occupant by showing the picture to the manager, called out Pulliam's name and then entered, the manager using his key.

Within the apartment there were found a suitcase and pipes and caps that were similar to those used in other bombs which had been placed at State College. Shells were found from which gunpowder had been removed.

The subject of the present inquiry is the material which the trial court suppressed as evidence. The material in question is ammunition and weapons found in a closet, a letter which was found on the top of the drawer of a desk, and a Greyhound Bus receipt, also found in the desk drawer. The contents of the letter allegedly are incriminating, but at this time we do not need to analyze the subject matter nor to rule on the admissibility of the letter except as relates to its finding. The court suppressed these items on the ground that the officers were satisfied, before finding them, that Pulliam was not in the apartment.

When the first officers entered the apartment, they did so, according to their testimony, in order to assist Pulliam if he had been injured, and to find him in any event in order to arrest him. When the substituting officers arrived, it was their purpose, they testified, to look for any explosives that may not have been found, and to find any address of Pulliam, for which purpose they opened the desk drawer.

We conclude that the officers were in hot pursuit of Pulliam within the meaning of *People* v. *Smith,* 63 Cal.2d 779 [48 Cal.Rptr. 382, 409 P.2d 222], and that there were exigent circumstances for their action within the

meaning of *People* v. *Roberts,* 47 Cal.2d 374 [303 P.2d 721]. The trial judge, therefore, was quite correct in denying the motion to suppress the evidence to the extent that he did so. But we are of the opinion that even though some of the officers had concluded that Pulliam was not in the apartment (and even if all of them had so concluded), the search could properly go on. There were still important things to be found and there were still exigent circumstances which justified the attempt to find them, even thought the officers had no search warrant.

The first of these was a possible bomb. Not only was it known that Pulliam probably was the person who had carried the unexploded bomb at the college, but it was also known that materials specially adapted to the making of another bomb were in Pulliam's apartment. A completed bomb might have been lodged anywhere in the apartment. We reject the accuseds' argument that the reasonableness of the search is to be measured in the same way as is done in considering the search for narcotics, or even for a gun. A bomb has special characteristics which obviously differentiate it from all other objects. In the first place, the maker often loses control over the time of its detonation. Witness the terrible injuries suffered by Peebles. In the second place, it may wreak enormous havoc on persons and property. In the third place, its victims are often unintended sufferers. And finally, considering its vast destructive potentialities, it is susceptible of fairly easy concealment. Therefore, the continued search for a bomb within the apartment was justified, whether Pulliam was thought to be on the premises or not.*

The second object of the search was Pulliam himself. Anything which would be helpful in locating him was extremely important. Had he been injured, finding him would perhaps have saved his life. But if he were not injured, there remained the matter of capturing him as quickly as possible. The automobile which Peebles had told the officers had been used had not yet been found. It could not be known that Pulliam was not carrying a third or fourth bomb.

One way of testing the reasonableness of the search is to ask ourselves what the situation would have looked like had another bomb exploded, killing a number of people and perhaps Pulliam himself, while officers were explaining the matter to a magistrate. It is a mark of the genius of the Constitution that the Fourth Amendment, while protecting the right of the people to be secure in their persons, houses, papers and effects, does

---

*It is to be observed that the threat that a bomb has been lodged brings about a widespread search, without search warrant, of all manner of property of individuals against whom there is no suspicion of guilt. It would be strange to allow such search on the basis of protection and to bar the search, even though without a warrant, in the circumstances of this case.

so only against *unreasonable* searches and seizures. The constant test is whether a search is reasonable. (*Terry* v. *Ohio,* 392 U.S. 1 [20 L.Ed.2d 889, 88 S.Ct. 1868].)

Let a writ of mandate issue directing the trial court to vacate its order suppressing evidence.

Rattigan, J., and Christian, J., concurred.

A petition for a rehearing was denied May 6, 1970, and the petition of the real parties in interest for a hearing by the Supreme Court was denied June 5, 1970.