[Crim. No. 36000. Second Dist., Div. One. Nov. 13, 1980.]

THE PEOPLE, Plaintiff and Respondent, v.
RICHARD CARY SOLDOFF, Defendant and Appellant.

**COUNSEL**

Weitzman & Fidler, Howard L. Weitzman and Larry Fidler for Defendant and Appellant.

George Deukmejian, Attorney General, Robert H. Philibosian, Chief Assistant Attorney General, S. Clark Moore, Assistant Attorney General, Robert F. Katz and Richard D. Marino, Deputy Attorneys General, for Plaintiff and Respondent.

**OPINION**

**JEFFERSON (Bernard), Acting P. J.*—**In an information, defendant was accused of committing several felony offenses: in count 1, a viola-

*Retired Presiding Justice of the Court of Appeal sitting under assignment by the Chairperson of the Judicial Council.

tion of section 11351 of the Health and Safety Code (possession of cocaine); in count 2, a violation of section 11359 of the Health and Safety Code (possession of marijuana for sale); in count 3, a violation of section 12020, subdivision (a), of the Penal Code (possession of a sawed-off shotgun); and in count 4, a violation of section 496 of the Penal Code (receiving stolen property).

Defendant made a motion to suppress evidence. After a denial of this motion by the court, he withdrew his plea of not guilty to counts 2 and 3, and entered a plea of guilty thereto. He appeals from the judgment entered on the plea of guilty. On appeal, defendant advances the following contentions in attacking the judgment of conviction: (1) The trial court erred in denying his motion to suppress evidence in that (a) a search warrant was invalid because it was issued on information obtained as a result of a prior illegal search, and (b) destruction of a tape of a police broadcast required suppression of the evidence; and (2) The plea of guilty was invalid because he did not waive his privilege against self-incrimination upon entering the plea.

I

*A Summary of the Facts*

On January 31, 1978, about 11 p.m., while Officers Venegas and John of the Los Angeles Police Department were in a patrol car, they received a radio broadcast reporting an "ambulance shooting" at 2139 Nichols Canyon. Their understanding of the report was that a shooting had occurred and an ambulance had been dispatched to that address. They arrived there five minutes after they received the broadcast report. No one was in front of the house; they saw two automobiles in the driveway; they observed that lights were on outside the house, but no lights were on inside the house.

A few moments later, an ambulance arrived. The officers knocked on the front door of the house and identified themselves. There was no response. Officer Venegas looked into a front window. It was not locked, so he pushed it open. Believing that someone had been shot, Officer Venegas entered the house through the window to look for a possible victim. He opened the front door for other officers to enter. They then made a search of the house.

A bullet hole was in the glass door of the den, and blood was on the floor of the den. A blanket with fresh blood on it was also on the floor

of the den. A trail of blood about 10 feet in length extended outside the den to a patio. There was also a pool of blood on the patio. Officer Venegas then returned to the den and opened a door to a corridor extending to another room, which appeared to be a laboratory.

In the laboratory he saw in plain view an open can in which there were 10 to 15 baggies containing a green, plant-like material. A sawed-off shotgun and rifles were also in plain view on a table in the laboratory. In searching a bedroom, Officer Venegas found another sawed-off shotgun. In a closet in the bedroom, the officer saw three large, opaque garbage bags. In the belief that they might contain a dismembered body, he felt those bags. From his touch, he concluded that the bags appeared to contain plant material. In a second bedroom the officer saw open boxes in which there were open cans containing a white powdery substance.

The search of the house lasted about 20 minutes. Officer John then returned to the patrol car and made a radio report that no victim had been found. Another officer telephoned the narcotics division of the police department. An hour later, a narcotics officer (Papke) arrived. Officer Venegas showed Papke what they had found. At about 3 a.m., Officers Venegas and Papke left the house to obtain a search warrant.

At the hearing on the motion to suppress evidence, defendant's mother testified that she arrived at the house about 8 a.m., on the morning of February 1, 1978, that a police car was in the driveway, and police officers were inside the house. She stated that her son possessed a gun collection which was missing and that the house was in disarray. The officers told defendant's mother that they were waiting for a search warrant. She then left the house to talk with another officer. She returned about 10 a.m. that same morning and observed a search warrant on the bar as you walked in the den.

## II

*The Motion to Suppress Evidence Was Properly*
*Denied by the Trial Court*

In contending that the trial court erred in denying his motion to suppress evidence obtained as a result of the issuance of a search warrant, defendant argues that the entry into the house by Officer Venegas

through the open window was a warrantless entry and, hence, was illegal; and that since the information obtained in that entry was the basis for the subsequent issuance of the search warrant, the issuance of the warrant must be held to be invalid. The thrust of defendant's argument that the search warrant was invalid centers on the theory that there was an absence of exigent circumstances to justify the warrantless entry.

■ Preliminarily, we take note of the fact that a proceeding under Penal Code section 1538.5 to suppress evidence is a full hearing on the issues before the superior court sitting as a finder of fact. (*People* v. *Superior Court* (*Keithley*) (1975) 13 Cal.3d 406, 410 [118 Cal.Rptr. 617, 530 P.2d 585]; *People* v. *Lawler* (1973) 9 Cal.3d 156, 160 [107 Cal.Rptr. 13, 507 P.2d 621].) Thus, the power to judge the credibility of witnesses, to resolve conflicts in the testimony, to weigh the evidence and draw factual inferences, is vested in the trial court. On appeal, all presumptions favor the proper exercise of that power; and the trial court's findings—whether express or implied—must be upheld if supported by substantial evidence. (See *Keithley* and *Lawler*, both *supra*.)

The question presented here is that of a determination of what constitutes exigent circumstances to justify a warrantless entry and search of premises. ■ The courts have formulated several rules to govern situations that will permit of a warrantless entry and search under the doctrine of exigent circumstances to excuse the necessity of obtaining a search warrant. One recognized rule is known as the "hot pursuit" doctrine to preclude escape of a suspected felon. (See *Warden* v. *Hayden* (1967) 387 U.S. 294 [18 L.Ed.2d 782, 87 S.Ct. 1642]; *United States* v. *Santana* (1976) 427 U.S. 38 [49 L.Ed.2d 300, 96 S.Ct. 2406].) Another accepted rule is that of the "necessity" to prevent destruction of evidence. (See *Cupp* v. *Murphy* (1973) 412 U.S. 291 [36 L.Ed.2d 90, 93 S.Ct. 2000]; *Schmerber* v. *California* (1966) 384 U.S. 757 [16 L.Ed.2d 908, 86 S.Ct. 1826]; cf. *Rochin* v. *California* (1952) 342 U.S. 165 [96 L.Ed. 183, 72 S.Ct. 205, 25 A.L.R.2d 1396].)

Another recognized exception to the warrant requirement is also a "necessity" situation—a motive to enter and search premises to preserve the life of a person thought to be in the premises and in imminent danger. In *People* v. *Hill* (1974) 12 Cal.3d 731, 754 [117 Cal.Rptr. 393, 528 P.2d 1], the court expressed this principle in the following language: "A warrantless entry of a dwelling is constitutionally permissible

where the officers' conduct is prompted by the motive of preserving life and reasonably appears to be necessary for that purpose."

We find examples of the preserving-life necessity as constituting exigent circumstances in cases such as *People v. Roberts* (1956) 47 Cal.2d 374 [303 P.2d 721]; *People v. Clark* (1968) 262 Cal.App.2d 471 [68 Cal.Rptr. 713]; and *People v. Gonzales* (1960) 182 Cal.App.2d 276 [5 Cal.Rptr. 920]. The factual situations in these cases were reviewed by our high court in *Horack v. Superior Court* (1970) 3 Cal.3d 720 [91 Cal.Rptr. 569, 478 P.2d 1]. In *Horack*, the court made this pertinent observation: "Thus, in *People v. Roberts*, we stated that '[n]ecessity often justifies an action which would otherwise constitute a trespass, as where the act is prompted by the motive of preserving life or property and reasonably appears to the actor to be necessary for that purpose.' [Citation.] The 'necessity' in *Roberts* was that police heard a moaning sound as if from a person in distress and entered defendant's apartment to render aid; the evidence sought to be suppressed was discovered in plain sight after the valid emergency entry. Similarly, in *Clark*, police entered the defendant's apartment because circumstances apparent to the officers indicated the 'probability that a woman within the apartment was the unwilling victim of some criminal act.' [Citation.] And in *Gonzales*, a police officer discovered marijuana in a search for identification in the clothing of a man found seriously injured with an abdominal stabbing wound." (*Id.* at p. 725; accord, *People v. Smith* (1972) 7 Cal.3d 282, 285 [101 Cal.Rptr. 893, 496 P.2d 1261].)

An instructive case is *People v. Superior Court (Peebles)* (1970) 6 Cal.App.3d 379 [85 Cal.Rptr. 803], in which the court held that exigent circumstances were present within the meaning of *Roberts* where officers entered an apartment to assist a suspected felon whom they believed had been injured in an attempted bombing.

The cases relied upon by defendant to support his view that the preserving-life necessity exception to the warrant requirement is not applicable in the case before us are not persuasive. *People v. Smith* (1972) 7 Cal.3d 282 [101 Cal.Rptr. 893, 496 P.2d 1261], for example, did not involve any emergency entry to determine whether an injured victim needed assistance. And in *Horack v. Superior Court* (1970) 3 Cal.3d 720 [91 Cal.Rptr. 569, 478 P.2d 1], the police had no reason to suspect that any occupant needed assistance.[1]

---

[1]Defendant seeks to distinguish *Roberts* by calling attention to the fact that the officers in the instant case did not hear any groans coming from the Nichols Canyon

 In the case before us, we conclude that there were ample exigent circumstances within the meaning of the preserving-life necessity exception to the warrant requirement to justify the officers' entry into the house in question. Here, as in *Hill, supra*, 12 Cal.3d 731, 755, "entering the premises was the only practical means of determining whether there was anyone inside in need of assistance." It is to be noted that the officers responded to a police broadcast about a possible shooting. They found a bullet hole and blood on the floor and in the patio. Since there was an absence of a body or a suspect, the search for a body was reasonable, including search of the trash bags in the closet in the belief that a dismembered body might be found therein.

We conclude, therefore, that there was a valid emergency entry. The evidence sought to be suppressed was discovered in plain sight.[2]

### III

### *The Destruction by the Police of the Tape Recording of a Police Broadcast*

After the police broadcast a report on the night of January 31, of an "ambulance shooting" at the Nichols Canyon address, a second broadcast was made in the early hours of February 1, which stated that the victim of the shooting was on his way to or in the hospital. Both of these broadcasts were tape recorded by the police. The recording of the second broadcast was destroyed by the police. It is defendant's position that the destruction of this tape recording rendered the evidence seized from the Nichols Canyon address inadmissible and subject to suppression.

This second tape recording pertaining to the defendant's residence was destroyed by the police custodian of records after he preserved a re-

---

premises. But *Roberts* cannot be interpreted as holding that the preserving-life exception to the warrant requirement applies only when groans are heard coming from the house in question.

[2]Defendant calls our attention to the fact that there is no "murder scene" exception to the search warrant requirement. (*Mincey* v. *Arizona* (1978) 437 U.S. 385 [57 L.Ed.2d 290, 98 S.Ct. 2408].) But *Mincey* acknowledged the rule of necessity in emergency situations by observing: "We do not question the right of the police to respond to emergency situations. Numerous state [citing, inter alia, *People* v. *Hill, supra*] and federal cases have recognized that the Fourth Amendment does not bar police officers from making warrantless entries and searches when they reasonably believe that a person within is in need of immediate aid." (*Id.* at p. 392 [57 L.Ed.2d at p. 300].)

cording of the first police broadcast. The custodian destroyed the second recording after having spoken with defense counsel, under the impression that the recording he preserved was the recording which defense counsel wanted and because the custodian did not know of the existence of other recordings relating to the incident at defendant's house.

Defendant advances the argument—based on *People v. Hitch* (1974) 12 Cal.3d 641 [117 Cal.Rptr. 9, 527 P.2d 361]—that the second recording was beneficial to his defense because it would establish that there was no existing preservation-of-life emergency at the time the officers made the warrantless search of his residence.

"[T]he *Hitch* rule exists to guarantee a defendant a fair trial through the preservation of evidence and not to punish police conduct." (*People v. Swearingen* (1978) 84 Cal.App.3d 570, 574 [148 Cal.Rptr. 755].) The *Hitch* case neither holds nor suggests that a law enforcement agency has a duty to retain and preserve all records permanently that may possibly benefit prospective defendants in future cases. (See *City of Sacramento v. Municipal Court* (1978) 83 Cal.App.3d 795, 799 [148 Cal.Rptr. 114].)

■ In the case at bench, the officer who conducted the warrantless search of the defendant's house testified that he did not receive information that the emergency no longer existed until *after* the search had taken place. The existence of the recording of the second broadcast would have been relevant to the issue of *when* it was received by the officers in the field. Its absence, however, did not prevent defendant from attacking the credibility of the officer with respect to when he heard the second broadcast.

Granted that "[t]he burden of preservation applies to physical evidence relevant to the determination of preliminary facts requisite to the admissibility of critically incriminating evidence" (*People v. Alfieri* (1979) 95 Cal.App.3d 533, 546 [157 Cal.Rptr. 304]), the trial court, in denying the motion to suppress evidence, impliedly found that the People met its burden of showing that "the governmental agencies involved...established, enforced and attempted in good faith to adhere to rigorous and systematic procedures designed to preserve" the evidence (*People v. Hitch, supra*, 12 Cal.3d 641, 652-653) and that the custodian honestly believed, from his conversations with defense counsel, that the

recording of the first broadcast was all that defense counsel desired preserved and that defense counsel did not expect the custodian go any further into any matter other than the first broadcast.

We conclude, therefore, that the trial court did not err in denying the motion to suppress evidence.

## IV

### *The Plea of Guilty Was Invalid Under the Circumstances*

The People concede that defendant's plea of guilty to counts 2 and 3 of the information was invalid and must be set aside, because he was not advised of his privilege against self-incrimination upon entering the plea. (See *People* v. *Levey* (1973) 8 Cal.3d 648, 654 [105 Cal.Rptr. 516, 504 P.2d 452]; *In re Tahl* (1969) 1 Cal.3d 122, 130 [81 Cal.Rptr. 577, 460 P.2d 449].) The case must thus be remanded to permit defendant to withdraw his pleas of guilty to counts 2 and 3. Upon a withdrawal of the guilty pleas, counts 1 and 4, dismissed in furtherance of justice, shall be reinstituted and defendant is entitled to enter not guilty pleas to all four counts and proceed to trial.

The judgment entered on the pleas of guilty is reversed with directions that defendant's pleas of guilty to counts 2 and 3 of the information be set aside and that defendant be rearraigned for pleas on those counts and on counts 1 and 4 to be reinstated accordingly.

Lillie, J., and Dunn (G. W.), J.,* concurred.

---

*Assigned by the Chairperson of the Judicial Council.